**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

Case No. 2:15-cv-00109-MKD

ZAN DENISE SALERNO,

                  Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

              Defendant.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

     BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 13, 18,[1] 20.  The parties consented to proceed before a magistrate judge. ECF No. 7.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court grants Defendant's motion (ECF No. 20) and denies Plaintiff's motion (ECF Nos. 13, 18).

**JURISDICTION**

---

[1]Plaintiff filed an amended motion raising one issue, the Appeals Council's determination regarding past relevant work.  ECF No. 18-1.

Order Granting Defendant's Motion for Summary Judgment and
Denying Plaintiff's Motion for Summary Judgment - 1

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina  v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id.*  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability

1    determination." *Id*. at 1115 (quotation and citation omitted). The party appealing

2    the ALJ's decision generally bears the burden of establishing that it was harmed.

3    *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

4    **FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

5    A claimant must satisfy two conditions to be considered "disabled" within the

6    meaning of the Social Security Act. First, the claimant must be "unable to engage in

7    any substantial gainful activity by reason of any medically determinable physical or

8    mental impairment which can be expected to result in death or which has lasted or

9    can be expected to last for a continuous period of not less than twelve months." 42

10    U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such

11    severity that he is not only unable to do his previous work[,] but cannot,

12    considering his age, education, and work experience, engage in any other kind of

13    substantial gainful work which exists in the national economy." *Id*.

14    § 1382c(a)(3)(B).

15    The Commissioner has established a five-step sequential analysis to determine

16    whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).

17    At step one, the Commissioner considers the claimant's work activity. *Id*.

18    § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the

19    Commissioner must find that the claimant is not disabled. *Id*. § 416.920(b).

20

1    If the claimant is not engaged in substantial gainful activities, the analysis

2    proceeds to step two.  At this step, the Commissioner considers the severity of the

3    claimant's impairment.  *Id*. § 416.920(a)(4)(ii).  If the claimant suffers from "any

4    impairment or combination of impairments which significantly limits [his or her]

5    physical or mental ability to do basic work activities," the analysis proceeds to step

6    three.  *Id*. § 416.920(c).  If the claimant's impairment does not satisfy this severity

7    threshold, however, the Commissioner must find that the claimant is not disabled.

8    *Id.*

9    At step three, the Commissioner compares the claimant's impairment to

10   severe impairments recognized by the Commissioner to be so severe as to preclude a

11   person from engaging in substantial gainful activity.  *Id*. § 416.920(a)(4)(iii).  If the

12   impairment is as severe as or more severe than one of the enumerated impairments,

13   the Commissioner must find the claimant disabled and award benefits.  *Id*.

14   § 416.920(d).

15   If the severity of the claimant's impairment does not meet or exceed the

16   severity of the enumerated impairments, the Commissioner must pause to assess the

17   claimant's "residual functional capacity."  Residual functional capacity (RFC),

18   defined generally as the claimant's ability to perform physical and mental work

19   activities on a sustained basis despite his or her limitations, *id*. § 416.945(a)(1), is

20   relevant to both the fourth and fifth steps of the analysis.

Order Granting Defendant's Motion for Summary Judgment and
Denying Plaintiff's Motion for Summary Judgment - 4

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). *Id*. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. *Id*. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. *Id*. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. *Id*. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

Order Granting Defendant's Motion for Summary Judgment and
Denying Plaintiff's Motion for Summary Judgment - 5

**ALJ'S FINDINGS**

Plaintiff applied for disability insurance benefits (DIB) on September 17, 2010, and supplemental security income (SSI) benefits on March 16, 2011. In both applications, Plaintiff alleged a disability onset date of January 1, 2011. Tr. 242-50, 252-58. The applications were denied initially, Tr. 166-69, and on reconsideration, Tr. 170-82. Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on April 3, 2013. Tr. 51-91. On July 9, 2013, the ALJ denied Plaintiff's claim. Tr. 27-39.

At the outset, the ALJ found that Plaintiff met the insured status requirements of the Act with respect to her DIB claim through March 31, 2015. Tr. 29. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, January 1, 2011. Tr. 29. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; cardiac dysrhythmias; gastrointestinal disorders; alcohol dependence in early full remission; prescriptive pain medication addiction in early full remission; and mood disorder. Tr. 29. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 31. The ALJ then concluded that Plaintiff had the RFC to perform a range of light work. Tr. 33. At step four, the ALJ found that Plaintiff is able to perform her past

relevant work as a hand sander.  Tr. 39.  On that basis, the ALJ concluded that

Plaintiff was not disabled as defined in the Social Security Act.  Tr. 39.

On January 29, 2015, the Appeals Council granted review, and accepted

additional briefing and exhibits.  Tr. 238-42.  Specifically, the Appeals Council

issued a decision on February 26, 2015, disagreeing with the basis of the ALJ's step

four finding, but agreeing with the ALJ's conclusion.  Tr. 1-10.  The Appeals

Council found that Plaintiff is able to perform a different past relevant job, that of

housekeeping cleaner.  Tr. 5.  On that basis, the Appeals Council concluded that

Plaintiff is not disabled, Tr. 1-10, making the Appeals Council's decision the

Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. §

1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her DIB under Title II and SSI benefits under Title XVI of the Social Security Act.

ECF Nos. 13, 18-1.  Plaintiff raises the following three issues for this Court's

review:

1.  Whether the ALJ properly discredited Plaintiff's symptom claims;

2.  Whether the ALJ properly weighed the medical opinion evidence; and

3.  Whether the Appeals Council properly found that Plaintiff can perform her

    past relevant work as a housekeeping cleaner.

**DISCUSSION**

**A.  Adverse Credibility Finding**

First, Plaintiff faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting her symptom claims.  ECF No. 13 at 12-17.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81

F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided several specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "are not entirely credible." Tr. 35.

### 1.  Lack of Objective Medical Evidence

First, the ALJ found that Plaintiff's alleged physical impairments and their corresponding symptoms were not supported by the medical evidence. Subjective testimony cannot be rejected solely because it is not corroborated by objective

1    medical findings, but medical evidence is a relevant factor in determining the

2    severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th

3    Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

4         As the ALJ noted, very few objective findings support the level of limitations

5    alleged.  Tr. 35.  The record supports the ALJ's finding.  For instance, in October of

6    2011, examining physician Robert Bray, M.D., noted that Plaintiff complained of

7    low back and tailbone pain, but Dr. Bray was unable to identify objective findings to

8    support her complaints:

9         During the examination, Dr. Bray noted findings that were all within normal
         limits, including normal motor function and strength, normal coordination,
10        station and gait, normal range of motion in the cervical/lumbar spine, knee
         joints, hip joints and shoulder joints.  Dr. Bray noted signs of exaggeration
11        when the claimant complained of left shoulder pain upon "just the lightest
         touch" and observed further that her complaints were inconsistent or not
12        evident to the same extent on repeated testing.  Dr. Bray concluded that the
         claimant did not have a condition that would impose limitations based upon
13        her alleged physical conditions.

14   Tr. 36 (citing Tr. 574-76).

15        Because an ALJ may discount pain and symptom testimony based on lack of

16   medical evidence, as long as it is not the sole basis for discounting a claimant's

17   testimony, the ALJ did not err when she found Plaintiff's complaints exceeded and

18   were not supported by objective and physical exam findings.

19

20

1        *2.  Exaggeration of Symptoms*

2        The ALJ noted that a treating physician found that Plaintiff had exaggerated

3    her symptoms of pain and noted that her complaints were inconsistent with repeated

4    testing.  Tr. 36.  An ALJ may also permissibly rely on evidence of exaggeration as

5    diminishing the credibility of a claimant's complaints.  *See Tonapetyan v. Halter*,

6    242 F.3d 1144, 1148 (9th Cir. 2001) (The ALJ discredited claimant's testimony, in

7    part, because the claimant had tendency to exaggerate.  To illustrate her tendency to

8    exaggerate, "the ALJ noted Dr. Greenleaf's observation that she was uncooperative

9    during cognitive testing but was 'much better' when giving reasons for being unable

10   to work."  This was a specific and convincing reason "for discrediting Tonapetyan's

11   testimony.").  Similarly, Dr. Bray's observation cited by the ALJ, indicated that

12   Plaintiff complained of pain in the area of the top of her left shoulder and trapezius

13   muscle upon "just the lightest touch," but such complaints were not evident to the

14   same extent or were inconsistent on repeated testing.  Tr. 36 (citing Tr. 575).

15       *3.  Inconsistencies in Plaintiff's Testimony*

16       In discrediting Plaintiff's symptom claims, the ALJ noted several

17   inconsistencies in Plaintiff's testimony.  Contradiction with the medical record is a

18   sufficient basis for rejecting the claimant's subjective testimony.  *Carmickle v.*

19   *Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Johnson v. Shalala*,

20   60 F.3d 1428, 1434 (9th Cir. 1995).  Moreover, a strong indicator of credibility is the

consistency of the individual's own statements made in connection with the claim

for disability benefits and statements made to medical professionals.  S.S.R. 96-7p.

For example, in a disability report dated March 29, 2012, Plaintiff reported to

the SSA that she "had a heart attack in December of 2011" and "still suffers from

shortness of breath, weakness and heart symptoms."  Tr. 35 (citing Tr. 310, 325).

However, as noted by the ALJ, this report was contrary to the medical evidence.  Tr.

35; *see also* Tr. 605 (negative CT angiogram); Tr. 614 (minimal coronary artery

disease).  Moreover, at the hearing, Plaintiff admitted that she had not, in fact, had a

heart attack.  Tr. 30 (noting that nothing in the record substantiates a heart attack);

Tr. 66 (Plaintiff admitted that she had not had a heart attack).  Plaintiff testified her

doctor had advised that "her chest pain was due to GERD symptoms."  Tr. 66.  The

ALJ noted that testing showed only minimal coronary artery disease.  Tr. 30.

As another example, the ALJ noted that Plaintiff claimed in a Disability

Report that her ability to work was limited in part due to a kidney condition, and that

one of her kidneys had stopped functioning and needed to be removed.  Tr. 34

(citing Tr. 283, 290).  However there was nothing in the medical record

corroborating this assertion.  Tr. 34.  As another example, in April 2011, Plaintiff

reported that she made complete meals with several courses, but in May of 2011 just

a month later, Plaintiff reported that she "doesn't cook complete meals, lost interest

in food."  Tr. 34 (citing Tr. 273, 300).  The examples cited by the ALJ are evidence

of both exaggeration and inconsistency, which the ALJ was entitled to rely on in evaluating Plaintiff's credibility.

### 4. Daily Activities

The ALJ found that the level of physical and mental impairments alleged was inconsistent with Plaintiff's reported daily activities. Tr. 36-38. A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."). Here, the ALJ found, for example, Plaintiff was able to walk one-half mile,[2] shop for groceries, prepare several course meals, do her own laundry, go out of the house daily, perform volunteer work at her church, attend church weekly, and had no problems with personal care. Tr. 36 (citing 71-72, 80, 272-75).

---

[2] Plaintiff testified she is able to walk "about a mile and a half" on a level surface. Tr. 80. Elsewhere she reported being able to walk a half mile, Tr. 276, and a friend reported three miles. Tr. 506.

Order Granting Defendant's Motion for Summary Judgment and
Denying Plaintiff's Motion for Summary Judgment - 13

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted). The ALJ found that Plaintiff's physical impairments have not reduced her capacity to the extent that she is precluded entirely from basic work-related activity. Tr. 36.

Similarly, the ALJ found that Plaintiff's self-reported activities are inconsistent with disabling mental limitations. Tr. 37-38. For example, the ALJ noted that Plaintiff told examining psychologist Dr. Toews in November of 2011 that she had no difficulties with self-care; she could prepare and plan meals, do light housework and shop independently. Tr. 37 (citing Tr. 580-81). She interacted well with the residents she lived with in a clean and sober house. Tr. 37 (citing Tr. 581). Her daily activities also included embroidery, reading, going for walks in the woods, and bicycling. Tr. 37 (citing Tr. 581). She reported sleeping well, having good energy, and a good appetite. Tr. 37 (citing Tr. 581). Plaintiff has also reported that she was able to pay bills, count change, and handle a savings account, checkbook or money orders. Tr. 38 (citing Tr. 274). She spent time with a friend, with people at church, and talked on the phone with a friend daily. Tr. 38 (citing Tr. 275). Plaintiff

reported that she is able to maintain attention for an hour.  Tr. 38 (citing Tr. 276).

She handles changes in routine "well," and follows instructions well.  Plaintiff stated

in her functioning report that her ability to get along with authority figures was

"excellent."  Tr. 38 (citing Tr. 276-77).

By contrast, Plaintiff testified that she is "afraid to go out of [her] apartment,"

and this can last four to five months.  Tr. 58-59.  Plaintiff testified she becomes

claustrophobic and gets "panic attacks" when around a lot of people so she usually

shops at night.  Tr. 71-72.

The ALJ noted Plaintiff testified that she had attended courses for computer

training in 2011 but

> after fracturing her tailbone in February 2011 and due to her PTSD, she could
> not persist at these classes; assertions clearly not supported by the record as
> there are no supportive objective findings. [Tr. 58, 73]. . . She testified that
> she underwent therapy treatment at Spokane Mental Health until January
> 2012, when she completed programmed treatment.  [Tr. 63, 70]. She had
> panic attacks and feels anxious when going out and being around crowds, yet
> she went grocery shopping with a friend and utilized public transportation.
> [Tr. 58-59, 71, 72, 74, 80-81]. . . The claimant clearly and consistently
> performs basic functioning that is within the limitations prescribed by the
> residual functional capacity assessment contained in this decision.

Tr. 35.

The ALJ is correct that Plaintiff's assertion that she fractured her tailbone is

not supported by any objective evidence.  Reporting that such an injury in February

2011 put an end to Plaintiff's ability to attend classes is also unsupported, since

Plaintiff told treatment providers in May of 2011 that she was attending classes at

Order Granting Defendant's Motion for Summary Judgment and
Denying Plaintiff's Motion for Summary Judgment - 15

1   Spokane Falls Community College.  Tr. 432.[3]  The ability to attend classes is

2   inconsistent with Plaintiff's asserted physical and mental limitations.

3          Because the ALJ may employ "ordinary techniques of credibility evaluation,

4   such as the claimant's reputation for lying  . . . and other testimony by the claimant

5   that appears less than candid" when assessing the claimant's credibility, *Tommasetti*

6   *v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), the ALJ did not err when she found

7   inconsistencies between Plaintiff's testimony, her function report statements and

8   statements to examiners, and between Plaintiff's allegations of disabling limitations

9   and actual functioning.  *See Molina*, 674 F.3d at 1112 ("[T]he ALJ may consider

10  inconsistencies either in the claimant's testimony or between the testimony and the

11  claimant's conduct.").

12         The wide range of both physical and mental activities that Plaintiff reported

13  are inconsistent with allegedly disabling limitations and demonstrate an ability to

14  perform work-like activities.  The ALJ properly relied on daily activities that exceed

15  alleged limitations when she assessed Plaintiff's credibility.

16

17

18

    _____

19  [3] Significantly, in June 2011 Plaintiff reported "no current physical problems."  Tr.

20  469.

Order Granting Defendant's Motion for Summary Judgment and
Denying Plaintiff's Motion for Summary Judgment - 16

1    *5. Drug Seeking Behavior*

2         In evaluating Plaintiff's credibility, the ALJ noted a physician's evaluation

3    that Plaintiff had engaged in drug seeking behavior.  Tr. 37.  Specifically, the ALJ

4    noted that Dr. Toews' evaluation (Tr. 577-93) included the following review of

5    Plaintiff's hospital records:

6         [Dr. Toews] also noted that the claimant endorsed drug-seeking behaviors, as
          treating medical providers noted that she did not tell the whole truth
7         concerning her medication [citing Tr. 445].  He also noted that the claimant
          had consistently denied alcohol and drug history during her multiple visits to
8         the hospital.

9    Tr. 37 (citing 578-79).  Evidence of drug-seeking behavior may undermine a

10   claimant's credibility and may be evidence of a tendency to exaggerate pain.  *See*

11   *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (the likelihood that

12   claimant was exaggerating complaints of physical pain to "feed his Valium

13   addiction" supported the ALJ's decision to reject his testimony).  Moreover, an ALJ

14   may support her adverse credibility finding by citing to inconsistencies in the

15   claimant's testimony, prior inconsistent statements, and general inconsistencies in

16   the record.  *Thomas*, 278 F.3d at 958-59 (inconsistencies in the claimant's testimony

17   is properly considered); *Tommasetti v. Astrue*, 533 F.3d 1035 at 1039 (prior

18   inconsistent statements may be considered); *Molina*, 674 F.3d at 1112 (An ALJ may

19   support an adverse credibility finding by citing to general inconsistencies in the

20   record).  Dr. Toews' report reflected that Plaintiff sought medical care in the

Order Granting Defendant's Motion for Summary Judgment and
Denying Plaintiff's Motion for Summary Judgment - 17

emergency room numerous times, including fourteen visits to the ER in 2010 alone,[4] Tr. 579 (citing Tr. 435); and Plaintiff repeatedly misrepresented substance abuse to treatment providers, Tr. 579.  *Compare* Tr. 364 (In November of 2010, Plaintiff denies alcohol or recreational drug use); and Tr. 451 (On January 13, 2011, Plaintiff reports no alcohol or drug use); *with* Tr. 432 (In May 2011, Plaintiff admits that she is "addicted to medication" and wants help); Tr. 442 (Plaintiff says that she considers herself an opiate addict);[5] Tr. 439 (On May 30, 2011, Plaintiff was diagnosed with opiate and alcohol dependence.).  It was noted that after being given medication, Plaintiff's depression "significantly" improved.  Tr. 439.

Moreover, the ALJ properly considered the medical record reviewed by Dr. Toews documenting an ER treatment provider's opinion that Plaintiff was "not telling the whole truth" and was not "being very straightforward with information she is providing."  Tr. 37, 445, 579.  Because the ALJ may employ  "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying . . .

---

[4] Another record indicates Plaintiff was seen every two weeks in the ER for back pain, and is on numerous medications, including narcotics and sedatives.  Tr. 358.

[5] The record indicates Plaintiff reported that she used no alcohol or non-prescribed drugs as of September 2011, several years before her date last insured for DIB purposes, March 31, 2015.  Tr. 313.

Order Granting Defendant's Motion for Summary Judgment and
Denying Plaintiff's Motion for Summary Judgment - 18

and other testimony that by the claimant that appears less than candid" when assessing the claimant's credibility, *Tommasetti*, 533 F.3d at 1039, the ALJ did not err when she found Plaintiff's lack of candor with treatment providers diminished her credibility.

In sum, despite Plaintiff's arguments to the contrary, the ALJ provided several specific, clear, and convincing reasons, supported by the record, for rejecting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163.

## B.  Medical Opinion Evidence

Next, Plaintiff faults the ALJ for discounting the February 2011 opinion of examining psychologist, William Greene, Ph.D., and the Appeals Council for discounting the April 2013 opinion of Lylana Cox, M.D.  ECF No. 13 at 12, 18-19.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*.  "In addition, the regulations give more weight to opinions that are

Order Granting Defendant's Motion for Summary Judgment and
Denying Plaintiff's Motion for Summary Judgment - 19

explained than to those that are not, and to the opinions of specialists concerning

matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may

reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported by

clinical findings." *Bray,* 554 F.3d at 1228 (internal quotation marks and brackets

omitted). "If a treating or examining doctor's opinion is contradicted by another

doctor's opinion, an ALJ may only reject it by providing specific and legitimate

reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216

(citing *Lester*, 81 F.3d at 830-31).

Here, Dr. Greene's opinion and Dr. Cox's opinion were contracted by other

physicians; accordingly, the ALJ and the Appeals Council were required to provide

specific, legitimate reasons supported by substantial evidence to reject the

challenged opinions. *Bayliss,* 427 F.3d at 1216.

### 1.  Dr. Greene

The ALJ gave "little weight" to Dr.  Greene's assessment that Plaintiff

suffered from marked cognitive limitations and his opinion that Plaintiff may be able

to work part-time, "but it is unlikely that she will be able to fully support herself, and

should continue her application for Social Security." Tr. 350.  The ALJ did not fully

credit the opinion because it was rendered at a time that Plaintiff was actively

abusing substances, which Plaintiff failed to report to Dr. Greene, the opinion was

based primarily on Plaintiff's subjective complaints, and there was a lack of

objective findings to support the opinion.  Tr. 37.

### a. Substance Abuse

The ALJ discounted Dr. Greene's opinion because he was not aware of

Plaintiff's history of and current drug and alcohol abuse.  Tr. 37.  This was a proper

basis to reject Dr. Greene's opinion.  *See Andrews v. Shalala*, 53 F.3d 1035, 1043

(9th Cir. 1995) (upholding ALJ's finding that examining psychologist's

"conclusions regarding depression, post-traumatic stress disorder and schizotypal

personality disorder were unreliable because of [claimant's] contemporaneous

substance abuse," where non-examining medical expert in substance abuse issues

gave contrary testimony); *see also Coffman v. Astrue*, 469 Fed. App'x 609, 611 (9th

Cir. 2012) (affirming ALJ's rejection of examining psychologist's opinion, in part,

due to the fact that plaintiff "periodically concealed" his substance abuse from

treatment providers); *Serpa v. Colvin*, 2013 WL 4480016, *8 (E.D. Wa., Aug. 19,

2013) (affirming ALJ's rejection of a physician's opinion because it was made

without knowledge of the claimant's substance abuse and narcotic-seeking

behavior).

1    Plaintiff alleges there is no evidence in the record that Plaintiff denied

2    substance abuse to Dr. Greene.  Contrary to her assertion, there is ample evidence in

3    the record.  In Dr. Greene's February 2011 report, he noted Plaintiff told him that

4    she tried to commit suicide in 2002 "by slitting her wrists and taking pills," Tr. 346,

5    but he further noted there was no indication of current or recent substance use; no

6    diagnosis of substance abuse or dependence; no mental health symptoms that are

7    affected by substance abuse or dependence; drug or alcohol treatment are unlikely to

8    improve Plaintiff's ability to function in a work setting; and no chemical dependency

9    assessment was recommended.  Tr. 348.  Dr. Greene also noted that Plaintiff began

10   using alcohol at age 9-11 and "uses in moderation," and had "no other drug history."

11   Tr. 348.  In fact, Plaintiff had a substantial history of alcohol and drug abuse,

12   engaged in drug seeking behavior at various emergency rooms in 2010-2011, and

13   was using alcohol and pain medications until at least May and June of 2011 (when

14   she entered a rehabilitation facility).  Tr. 577-580.  Plaintiff's denial of substance

15   abuse to Dr. Greene was consistent with her behavior at various emergency room

16   and medical visits, where she sought pain medications and routinely denied alcohol

17   and drug use history.  *See* Tr. 578-79.  Moreover, an ALJ may properly consider a

18   claimant's lack of credibility and the extent to which her physician's opinion is

19   influenced by the claimant's own information.  *See Andrews,* 53 F.3d at 1040 (citing

20   *Fair v. Bowen,* 885 F.2d 597, 604 (1989)).  Because Plaintiff was less than candid

1   with Dr. Greene, his opinion was based on unreliable reporting and was therefore

2   also less reliable.

3          Further, whether Plaintiff "denied" substance abuse is not the central issue;

4   the fact that Dr. Greene was unaware of the contemporaneous substance abuse in

5   formulating his assessment as to Plaintiff's cognitive functioning undermines the

6   validity of such assessment.  This was a specific and legitimate reason to reject Dr.

7   Greene's opinion regarding cognitive limitations.

8                     *b.  Reliance on Plaintiff's Self Reports*

9          Second, the ALJ rejected Dr. Greene's opinion because it appeared to be

10  based upon the claimant's self-reports.  A physician's opinion may be rejected if it is

11  based on a claimant's subjective complaints, which were properly discounted.

12  *Tommasetti*, 533 F.3d at 1041 (An ALJ may reject an opinion that is "largely based"

13  on a claimant's non-credible self-reports); *Tonapetyan*, 242 F.3d at 1149; *Morgan v.*

14  *Comm'r*, 169 F.3d 595 (9th Cir. 1999); *Fair*, 885 F.2d at 604.  As discussed above,

15  the ALJ properly discredited Plaintiff's testimony.

16                    *c.  Test Results Inconsistent with Assessed Limitations and Lack of*
                         *Objective Findings*
17

18         Third, the ALJ relied on inconsistent test results and the noted lack of

19  objective findings supporting Dr. Greene's opinion.  Tr. 37.  Plaintiff contends that

20

Order Granting Defendant's Motion for Summary Judgment and
Denying Plaintiff's Motion for Summary Judgment - 23

1    Dr. Greene's opinion should have been credited because it was "based on objective

2    testing as noted on the MSE and MMPI.[6]"  *Id.* (citing Tr. 347-49).

3            Specifically, the ALJ observed

4            Dr. Greene noted that the claimant's results on the MMPI-2 were invalid for
             over reporting, [Tr. 351], but her TOMM[7] results were negative for over

5            reporting.  [Tr. 357.]  He noted that most objective findings were within
             normal limits, [Tr. 354-56], but also reported that the claimant complained of

6            memory difficulties, [Tr. 348], and social anxiety.  [Tr. 356.]  Despite these
             inconsistencies, Dr. Greene evaluated the claimant as markedly limited in four

7            of eight areas under cognitive and social functioning, [Tr. 348-49], yet he also
             opined that the claimant could care for herself, take medication and keep

8            appointments.  [Tr. 349]

9    Tr. 37.

10           Similarly, the Appeals Council observed that Dr. Greene's assessed

11   limitations were contradicted by the MSE findings that he recorded in the same

12   report.  Tr. 6.  Dr. Greene noted that Plaintiff was: "congenial; open/candid;

13   patient/cooperative; friendly/polite; good eye contact; and able to initiate and hold

14   conversation."  Dr. Greene deemed test results for attention and concentration

15   "satisfactory"; Tr. 354-55; judgment and intellectual ability were deemed adequate;

16   abstraction was "good"; mood and affect were "calm, controlled and appropriate";

17   ───────────────

18   [6] The MSE is the Mental Status Exam.  Tr. 354.  The MMPI-2 is the Minnesota
     Multiphasic Inventory, second edition.  Tr. 351.

19   [7] TOMM stands for Test of Memory Malingering.  National Center for
     Biotechnology Information, www.ncbi.nlm.nih.gov

20

Order Granting Defendant's Motion for Summary Judgment and
Denying Plaintiff's Motion for Summary Judgment - 24

1    and "suicidal/homicidal thoughts were denied."  Plaintiff was "very pleasant, good

2    social skills when not in distress (was distressed at times)."  Tr. 356.  Plaintiff was

3    able to recall three of three words, remember Dr. Greene's name, spell world

4    backwards correctly, and was alert and oriented.  Tr. 355.  The ALJ and Appeals

5    Council were entitled to give limited weight to Dr. Greene's opinion when the MSE

6    results contradicted, rather than supported, Dr. Greene's assessed dire limitations.

7         Plaintiff's reliance on the MMPI-2 results is similarly misplaced.  These test

8    results were invalid for over-reporting, indicating symptom exaggeration than

9    diminishes, rather that enhances, the reliability of Dr. Greene's opinion.  Tr. 37

10   (citing Tr. 351).  This test does not establish that the ALJ erred when she gave Dr.

11   Greene's opinion little weight since it indicates that Plaintiff exaggerated her

12   symptomology.

13        In addition, the ALJ relied on the opinion of examining psychologist Dr.

14   Toews and reviewing psychologist Dr. Beatty when she weighed Dr. Greene's

15   contradicted opinion.  Tr. 37-38.

16        Dr. Toews performed a psychological evaluation on November 3, 2011.  Tr.

17   577.  He opined that Plaintiff's history of depression and suicidal ideation "is

18   compatible with substance induced mood and/or affective disorder."  Tr. 583.  Dr.

19   Toews opined that Plaintiff is able to comprehend and remember detailed

20   instructions, relate and interact appropriately, and would be capable of functioning

in a wide range of occupations.  He opined, moreover, that "[m]edical records did

not appear to indicate *any* significant work related limitations."  Tr. 583 (emphasis

added).  The ALJ noted Dr. Toews found that Plaintiff's testing revealed poor

judgment, Tr. 581, but other results were within normal limits or deemed not

significant.  Tr. 38, 581-83.  The ALJ appropriately relied on Dr. Toews' opinion

when she weighed Dr. Greene's opinion.  An ALJ is not obliged to credit medical

opinions that are unsupported by the medical source's own data and/or contradicted

by the opinions of other examining medical sources.  *Tommasetti,* 533 F.3d at 1041.

The ALJ and the Appeals Council also relied on the March 2012 opinion of

reviewing psychologist Dr. Beatty:

On March 20, 2012, Edward Beatty, Ph.D., another evaluator at the State level

of disability determination, reviewed the medical evidence and opined that while the

claimant was in recovery,

> [Claimant] may have no more than occasional lapses in concentration,
> persistence and pace [citing Tr. 143].  The undersigned also accords great
> weight to the opinions of Dr. Beatty in this regard, as his opinions are
> supported by the mild objective findings of record and are consistent with the
> evidence documented by outpatient medical records.

Tr. 38.

The Appeals Council noted that "Dr. Beatty's opinion is consistent with that

of consultative examiner Jay Toews, Ed.D."  Tr. 6.  The Appeals Council found that

1   the ALJ appropriately relied, in part, on the opinions of Dr. Toews and Dr. Beatty

2   when she gave Dr. Greene's opinion little weight.  Tr. 6.

3          Here, the ALJ provided specific and legitimate reasons for discrediting Dr.

4   Greene's opinion of extreme mental limitations.

5          *2.  Dr. Cox*

6          In addition, Plaintiff's challenges the Appeals Council's evaluation of the

7   opinions of Dr. Cox, Tr. 6-7, whose report was submitted after the ALJ issued her

8   decision denying benefits, contending that Dr.'s Cox opinion was entitled to

9   controlling weight.  ECF 13 at 12.  On April 10, 2013, Dr. Cox opined that Plaintiff

10  is disabled.  Tr. 914.  The Appeals Council rejected Dr. Cox's opinion that Plaintiff

11  is unable to work due to depression and back pain:

12          Records submitted after the issuance of the Administrative Law Judge's
            decision indicate that Dr. Cox documented the aforementioned conditions
13          [foot blisters, swelling of the ankles and throbbing in the joints, and
            depression, Tr. 914] and opined that the claimant is disabled under 24 C.F.R.
14          582.5 due to depression and back pain [citing Tr. 913].  However, these
            treatment records and opinion do not change the weight of the evidence.  The
15          ultimate finding of disability is reserved for the Commissioner, and treating
            source opinions on issues reserved for the Commissioner are never entitled to
16          controlling or weight or special significance (citing Social Security Ruling 96-
            5p).  Consequently, Dr. Cox's opinion that the claimant is disabled is not
17          entitled to controlling weight.

18          Furthermore, the definition of disability under C.F.R. 582.5 differs from the
            definition under the Social Security Act, and an opinion or finding that the
19          claimant is disabled according to the regulations of another governmental
            agency is not binding upon the Social Security Administration (citing SSR 06-
20          03p).

Order Granting Defendant's Motion for Summary Judgment and
Denying Plaintiff's Motion for Summary Judgment - 27

1

2

3

4

      Finally, Dr. Cox's opinion is not supported by her treatment notes or the record as a whole.  It is not consistent with the other medical opinion evidence regarding specific mental work-related limitations. . . or with other medical opinion evidence regarding specific physical work-related limitations, including the opinions of state agency medical consultant Brent Packer, M.D. [citing Tr. 140-42, Tr. 159-61], and consultative examiner Robert Bray, M.D. [citing Tr. 572-76].

5

Tr. 6-7 (citing Tr. 913-915).

6

7

8

      The ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."  *Bray*, 554 F.3d at 1228 (internal quotation marks and brackets omitted).

9

10

11

12

13

14

15

16

17

18

19

      The record shows Plaintiff's reported functioning is also inconsistent with Dr. Cox's opinion.  Plaintiff reported that she shopped for clothing and groceries, was able to go out alone, prepared complete meals with several courses, and spent time with friends, including a friend she told Dr. Greene that she tries to visit daily.  Tr. 348.  Plaintiff reported that she attended and volunteered at church, walked, read, did embroidery, used public transportation, biked, and attended college computer classes two to three days a week for two months.  Tr. 58 (Plaintiff testified she went to classes for two months), Tr. 100 (In January 2011, Plaintiff says she is starting school soon).  Because the Commissioner is not required to credit medical opinions that are unsupported by the record as a whole, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004), including a claimant's demonstrated

20

Order Granting Defendant's Motion for Summary Judgment and
Denying Plaintiff's Motion for Summary Judgment - 28

1   functioning, the Appeals Council gave specific, legitimate reasons supported by

2   substantial evidence for discrediting Dr. Cox's extreme opinion.

3       "Where there is conflicting medical evidence, the Secretary must determine

4   credibility and resolve the conflict." *Thomas*, 278 F.3d at 956-57 (citing *Matney v.*

5   *Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).  When evidence is susceptible of

6   more than one rational interpretation, it is the ALJ's conclusion which must be

7   upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (citation omitted).

8   In reaching his findings, the law judge is entitled to draw inferences logically

9   flowing from the evidence. *Id.* (citations omitted).

10  **C.  Past Relevant Work**

11      Finally, Plaintiff faults the Appeals Council for finding that she is able to

12  perform her past relevant work as a housekeeping cleaner.  ECF No. 18-1 at 2-3.

13      In determining the RFC, the ALJ is required to consider the combined effect

14  of all the claimant's impairments, mental and physical, exertional and non-

15  exertional, severe and non-severe.  42 U.S.C. § 423(d)(2)(B), (5)(B).  "An ALJ must

16  propound a hypothetical to a [vocational expert] that is based on medical

17  assumptions supported by substantial evidence in the record that reflects all the

18  claimant's limitations." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

19  "If the assumptions in the hypothetical are not supported by the record, the opinion

20  of the vocational expert that claimant has a residual working capacity has no

evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). "It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record." *Osenbrock*, 240 F.3d at 1165. Here, this Court finds the ALJ's and the Appeals Council's RFC included the full extent of Plaintiff's limitations supported by substantial evidence in the record.

Plaintiff argues that the Appeals Council's determination is contrary to the testimony of the vocational expert, contending that the vocation expert opined that Plaintiff "could not perform work that would require her to be on her feet[.]" ECF No. 18-1 at 2-3 (citing Tr. 88). Plaintiff's argument is flawed because neither the ALJ nor the Appeals Council assessed an RFC that limited Plaintiff to standing to less than four hours a day. *See* Tr. 33 (the ALJ assessed an RFC that included standing or walking for six hours in an eight-hour workday); Tr. 7 (the Appeals Council found Plaintiff was capable of a range of light work, as had the ALJ, which explicitly included the ability to stand or walk for six hours in an eight-hour workday). In support of her argument, Plaintiff cites to the vocational expert's testimony where Plaintiff's counsel asked the vocational expert whether a person who was limited to standing less than four hours a day would be able to perform Plaintiff's past relevant work as a sorter. ECF 18 at 2. The vocational expert answered that he did not think this would be possible. Tr. 88-89. However, neither

1    the ALJ nor the Appeals Council incorporated a four-hour standing limitation in the

2    RFC.  Plaintiff did not challenge the assessed RFC.

3         Accordingly, Plaintiff's argument is unsupported by the record.  An opinion

4    by the VE based on an RFC different from the one actually assessed has no

5    evidentiary value.  *See e.g., Bayliss*, 427 F.3d at 1217-18 (It is proper for an ALJ to

6    limit a hypothetical to restrictions supported by substantial evidence in the record,

7    and an ALJ's reliance on the testimony the VE gives in response is therefore proper)

8    (citation omitted).  The record shows that Plaintiff was limited to standing six, not

9    four, hours in an eight-hour workday.  The Appeals Council's assessed RFC and

10   step four finding were both properly supported by the evidence.

11        The ALJ appropriately included the limitations supported by substantial

12   evidence in the record in the assessed RFC.  Plaintiff alleges that the ALJ should

13   have weighed the evidence differently, but the ALJ is responsible for reviewing the

14   evidence and resolving conflicts or ambiguities in testimony.  *Magallanes v. Bowen*,

15   881 F.2d 747, 751 (9th Cir. 1989).  If there is substantial evidence to support the

16   administrative findings, or if there is conflicting evidence that will support a finding

17   of either disability or nondisability, the finding of the Commissioner is conclusive.

18   *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

19                                        **CONCLUSION**

20        After review, the Court finds that the ALJ's decision, as amended with respect

to the step four finding by the Appeals Council, is supported by substantial evidence

and free of harmful legal error.

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (ECF No. 20) is **GRANTED.**

2. Plaintiff's motion for summary judgment and amended motion for

   summary judgment (ECF Nos. 13, 18) are **DENIED**.

The District Court Executive is directed to file this Order, enter **Judgement**

**for Defendant**, provide copies to counsel, and **CLOSE** the file.

DATED this 18th day of May, 2016.


_S/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

Order Granting Defendant's Motion for Summary Judgment and
Denying Plaintiff's Motion for Summary Judgment - 32